UNITED STATES DISTRICT COURT<br>DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * *

Julio Felix,

                Petitioner,

vs.                          REPORT AND RECOMMENDATION

Ricardo Rios, Michael Nalley,<br>and Harley Lappin,

                Respondents.        Civ. No. 08-4925 (PAM/RLE)

* * * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, in which the Petitioner challenges the duration of his sentence, pursuant to Title 28 U.S.C. §2241.

For these purposes, the Petitioner Julio Felix appears pro se, and the Respondents Ricardo Rios, Michael Nalley, and Harley Lappin, appear by Ana H. Voss, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

## II.  Factual and Procedural Background

On August 13, 2008, the Petitioner, who is a Federal prisoner, filed a Habeas Petition, in which he alleges a violation of his constitutional rights, during the course of a prison disciplinary proceeding at the Federal Prison Camp, in Duluth, Minnesota ("FPC-Duluth").  See, Petition, Docket No. 1.[1]  Specifically, the Petitioner contends that he was wrongfully convicted, and disciplined, for Assaulting Another Without Serious Injury, which resulted in the loss of his vested and non-vested good-conduct time, as well as other sanctions.  Id. at p. 3.[2]

---

[1]Following the events giving rise to this lawsuit, the Petitioner was transferred to the Federal Correctional Institution, in Waseca, Minnesota, and he was incarcerated at that facility when he commenced this action.  See, Declaration of Angela Buege ("Buege Decl."), Docket No. 5, at ¶3 and Attachment A.  The Petitioner has since been transferred again, to the Federal Correctional Institution, in Littleton, Colorado.  See, Docket No. 10.

[2]We note briefly that, in his Petition, the Petitioner asserts that his Eighth Amendment rights were violated, when he was subjected to "more than 30 days in 'the hole' in less than 25 sq. ft. per prisoner and [provided] inadequate clothing for outside exercise."  Petition, Docket No. 1, at p. 4 and p. 9 ¶¶14-18.  We cannot, however, consider this claim in a Habeas proceeding.  Federal Habeas provides a remedy for prisoners challenging the fact or duration of their custody, **not** the conditions of their confinement.  See, Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996)("If the prisoner is not challenging the validity of his conviction or the length of his detention * * * then a writ of habeas corpus is not the proper remedy."); see also, Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993)("The central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking immediate release or a speedier

According to the Respondents, on January 27, 2008, several inmates saw the Petitioner assault his cellmate, Sergio Quijano ("Quijano"). See, <u>Declaration of Angela Buege ("Buege Decl.")</u>, <u>Docket No. 5</u>, at ¶5, and Attachment B ("Incident Report"). The inmate-witnesses saw the Petitioner "pushing and shoving inmate Quijano," "making threatening remarks to Quijano," and "throw[ing] cups, a bowl, and a chair at inmate Quijano." <u>Id.</u> The inmate-witnesses also reported that the Petitioner was the aggressor, and that Quijano did not retaliate. <u>Id.</u> According to the Petitioner, he was placed in 'the hole,' or administrative segregation, on January 29, 2008, as a result of the alleged assault. See, <u>Affidavit of Julio Felix ("Felix Aff.")</u>, <u>Docket No. 1</u>, at ¶12.

On February 15, 2008, the staff at FPC-Duluth investigated the alleged assault, and delivered an Incident Report to the Petitioner.[3] See, <u>Incident Report</u>, supra; <u>Buege</u>

---

release."), cert. denied, 512 U.S. 1246 (1994); <u>Badea v. Cox</u>, 931 F.2d 573, 574 (9th Cir. 1991)("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement * * *[;] [a] civil rights action, in contrast, is the proper method of challenging 'conditions of * * * confinement.'")[internal citation omitted]. If, as the Petitioner alleges, he has a claim which relates to the conditions of his confinement, then he has administrative and legal remedies, but he may not pursue that claim here. As a result, we recommend that Ground 3 of his Petition be denied.

[3]Title 28 C.F.R. §541.15(a) provides that "[s]taff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate,

Decl., supra at ¶6. The Petitioner was advised of his rights, and asked if he would like to make any statement. Id.; Buege Decl., supra at ¶6. Although the Petitioner denied fighting with Quijano, he was charged with Assaulting Another Without Serious Injury, in violation of BOP Code 224, and the Incident Report was forwarded to the Unit Discipline Committee ("UDC") for consideration.[4] Id.; Buege Decl., supra at ¶¶5, 7.

On February 21, 2008, the UDC conducted a Hearing on the Incident Report. Id.; Buege Decl., supra at ¶9. Once again, the Petitioner denied fighting with Quijano, and he asked for the identities of the inmate-witnesses, who were referenced in the Incident Report. Id.; Buege Decl., supra at ¶9. The UDC referred the Incident Report to the Disciplinary Hearing Officer ("DHO") for an additional Hearing, owing to the severity of the alleged offense. Id.; Buege Decl., supra at ¶9. Accordingly, on

---

ordinarily within 24 hours of the time staff became aware of the inmate's involvement of the incident."

[4]Pursuant to Title 28 C.F.R. §541.15, the UDC is charged with conducting an initial Hearing, with respect to any rule violations. In addition, "[i]f the UDC finds at the initial hearing that an inmate has committed a prohibited act, the UDC may impose minor dispositions and sanctions." Id. However, "[w]hen an alleged violation of Bureau rules is serious and warrants consideration for other than minor sanctions, the UDC shall refer the charges to the Discipline Hearing Officer for further hearing." Id.

February 21, 2008, the Petitioner was provided with written notice of the DHO Hearing, and of his rights, including the right to have a staff representative, to call witnesses, and to present evidence. See, <u>Buege Decl.</u>, supra at ¶10 and Attachment C.

Seven (7) days later, on February 28, 2008, the DHO conducted a Hearing, at which the Petitioner was again advised of his rights. See, <u>Buege Decl.</u>, supra at ¶11, and Attachment C. Although the Petitioner had initially requested a staff representative, <u>id.</u>, Attachment B, at the time of the Hearing, the Petitioner explained that "he actually wanted his Counselor as a character witness, not as a staff representative." <u>Id.</u> at ¶12, and Attachment D. The Petitioner then made a statement, in which he denied fighting with Quijano, and further denied making any threats. <u>Id.</u> at ¶11, and Attachment D. In addition, the Petitioner reported that Quijano had similarly denied any such altercation, when questioned by staff members. <u>Id.</u> The Petitioner also called three (3) witnesses, including his counselor and another inmate, who advised that the Petitioner had been an outstanding orderly. <u>Id.</u> at ¶12, and Attachment D. The Petitioner also called a second inmate as a witness, who testified that he "heard [the Petitioner] was in an argument." <u>Id.</u> Both inmate-witnesses declined to make any further statements. <u>Id.</u>

With respect to documentary evidence, the DHO considered the Incident Report, as well as Inmate Injury Assessment and Followup Form, dated January 29, 2008, which disclosed that the Petitioner did not sustain any injuries, as a result of the alleged assault, while Quijano suffered a skin tear to his right thumb, as well as an abrasion and redness to his thigh. Id., Attachment E. In addition, Quijano reported that his "roommate threatened to kill him and threw many objects and [a] chair at him." Id. The DHO also considered confidential information, in which "several inmates corroborated the information on the assault." Id., Attachment D. However, the DHO did not provide the confidential information to the Petitioner, owing to security concerns. Id.

As a result, the DHO found that the Petitioner had committed the assault as charged, based upon the greater weight of the evidence. Id. He recommended a disciplinary transfer, and he further imposed sanctions, including the disallowance of 27 days of vested good-conduct time, the forfeiture of 30 days of non-vested good-conduct time, a sentence of 30 days in disciplinary segregation, and the loss of commissary, telephone, and visiting privileges, for six (6) months. Id. The DHO acknowledged that, "[a]lthough not directly related to the infraction, privileges were taken to deter the inmate from such actions in the future." Id. The DHO underscored

the gravity of the infraction, given that an assault "can be life threatening," "can lead to serious injury to both staff and inmates," and can "encourage other inmates into similar action." Id.

In his decision, the DHO advised the Petitioner of his right to pursue an appeal, through the BOP's administrative process. Id. Accordingly, the Petitioner filed an appeal of the DHO's decision, to the Regional Director of the BOP, which denied his appeal on July 7, 2008. Id. at ¶20, and Attachment F. Thereafter, the Petitioner filed an appeal with the Central Office, id., which denied his appeal on September 24, 2008. See, Petitioner's Reply, Docket No. 8, Exhibit B.

Before receiving any decision from the Central Office, the Petitioner commenced this action, in which he contends that the disciplinary proceeding violated his constitutional rights. In his Petition, the Petitioner first asserts that, by taking away good-conduct time, the DHO's decision constitutes an unconstitutional Bill of Attainder. See, Petition, supra at p. 3. In addition, the Petitioner asserts that the DHO violated his Due Process rights, by imposing sanctions which were unrelated to the alleged violation. Id. Lastly, in his supporting Affidavit, the Petitioner contends that the Incident Report was not timely delivered, and that the DHO's decision was unsupported by the evidence. See, Felix Aff., supra at ¶¶10, 12-13. The Petitioner

has not specified any particular relief in his Petition, but in his administrative appeals, he sought an expungement of the Incident Report. See, <u>Petitioner's Reply</u>, supra, Exhibit B.

For their part, the Respondents deny any violation of the Petitioner's constitutional rights, and they contend that the DHO's decision is supported by sufficient evidence. See, <u>Government's Memorandum in Opposition</u>, <u>Docket No. 4</u>, at pp. 14, 17.[5] As a result, the Respondents ask that we deny the Petition, in its entirety.

We address the parties' arguments in turn.

## III. <u>Discussion</u>

A.    <u>The Petitioner's Challenge to the Declaration of Angela Buege</u>.

As a threshold matter, the Petitioner argues that we must exclude the Declaration of Angela Buege ("Buege"), who is a paralegal specialist with the BOP,

---

[5]The Respondents also contend that the Petitioner failed to exhaust his administrative remedies. See, <u>Government's Memorandum in Opposition</u>, <u>Docket No. 4</u>, at p. 12. However, since the filing of the Petition, the Central Office denied the Petitioner's pending appeal, and as a consequence, he has now fully exhausted the BOP's administrative process. See, <u>Petitioner's Reply</u>, <u>Docket No. 8</u>, Exhibit B; see also, <u>Buege Decl.</u>, supra at ¶¶18-19 ("Once an inmate has received a final response from the Central Office, he or she has exhausted his or her administrative remedies."). As a result, we do not address the failure to exhaust argument further.

based upon his contention that her averments constitute hearsay. See, <u>Petitioner's</u> <u>Reply</u>, supra at p. 8, citing <u>Buege Decl.</u>, supra at ¶¶7-17. In addition, the Petitioner argues that we must exclude the records, which are attached to Buege's Declaration, based upon his contention that Buege "cannot swear to the authenticity of the signatures that she did not witness," including the signature of the DHO. <u>Id.</u> Instead, the Petitioner contends that the records must be "notarized or verified as a true and correct copy by the maker * * * ." <u>Id.</u> We disagree.

The Petitioner correctly notes that the Federal Rules of Evidence are applicable to Habeas proceedings, under Title 28 U.S.C. §2241. See, <u>Rule 1101(e)</u>, <u>Federal Rules of Evidence</u>. With respect to the admissibility of documents, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." <u>Rule 901(a)</u>, <u>Federal Rules of Evidence</u>.

Here, we understand the Petitioner to argue that the documents are not self-authenticating, because they have not been notarized by the signatories. As is here pertinent, Rule 902, Federal Rules of Evidence, provides as follows:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: * * *

- 9 -

(2)     Domestic public documents not under seal.  A
document purporting to bear the signature in the
official capacity of an officer or employee of any
entity included in paragraph (1) hereof, having no
seal, if a public officer having a seal and having
official duties in the district or political subdivision
of the officer or employee certifies under seal that
the signer has the official capacity and that the
signature is genuine.

Rule 902(2), Federal Rules of Evidence.

However, we do not address the Petitioner's argument concerning self-authentication,

because we conclude that the BOP records have been properly authenticated, through

Buege's testimony, pursuant to Rule 901, Federal Rules of Evidence.

As noted, "Rule 901 mandates only that the authentication requirement 'as a

condition precedent to admissibility is satisfied by evidence sufficient to support a

finding that the matter in question is what its proponent claims.'"  United States v.

Two Elk, 536 F.3d 890, 905 (8th Cir. 2008), quoting Rule 901(a), Federal Rules of

Evidence; United States v. Ingram, 613 F. Supp.2d 1069, 1095 (N.D. Iowa 2009)

(citing same).  "The Rule then notes that the '[t]estimony of [a] witness with

knowledge' suffices."  Id., quoting Rule 901(b)(1), Federal Rules of Evidence; United

States v. Ingram, supra at 1095.

In her Declaration, Buege attests that, pursuant to her employment with the BOP, she has "access to records maintained by the BOP in the normal course of business for inmates, including administrative remedy information and sentence computation information."  Buege Decl., supra at ¶¶1-2.  She further attests that the records, which are attached to her Declaration, are true and accurate copies of BOP records, that are kept in the ordinary course of business.  See, e.g., id. at ¶3.  As a result, we conclude that the BOP records have been properly authenticated, through Buege's testimony.  See, Rule 901(b)(1), Federal Rules of Evidence (authentication can be achieved by testimony, from a witness with knowledge, "that a matter is what it is claimed to be"); see also, United States v. Locke, 425 F.2d 313, 315 (5th Cir. 1970)("Since [the BOP administrative assistant] was the official custodian of the records introduced as government exhibits and since he testified that they were authentic, the trial court did not commit reversible error in allowing those documents to be introduced into evidence.").

Moreover, to the extent that those documents might contain hearsay, they are admissible pursuant to the business records exception.  See, Rule 803(6), Federal Rules of Evidence; see also, United States v. Azure, 801 F.2d 336, 342 (8th Cir. 1986)("Rule 803(6) calls for a proper foundation to be made through the 'testimony

of the custodian or other qualified witness,'" "'that a document has been prepared and kept in the course of a regularly-conducted business activity.'"), quoting <u>Kehm v. Procter & Gamble Manufacturing Co.</u>, 724 F.2d 613, 626 (8th Cir. 1983); <u>United States v. Page</u>, 544 F.2d 982, 987 (8th Cir. 1976)("In admitting an exhibit into evidence pursuant to Fed. R. Evid. 803(6), it is unnecessary that the identification witness have personal knowledge of the actual creation of the document."); <u>Stone v. Morris</u>, 546 F.2d 730, 738 (7th Cir. 1976)("A prison is clearly a 'business' within the meaning of the term in the statute and the rule, and inasmuch as the memorandum was prepared by a member of the [prison staff] and was lodged in the official prison files, we conclude that it was made in the regular course of prison business activity.").

As a result, we conclude that Buege's Declaration is admissible, and we reject the Petitioner's assertion that it is not, as without merit.

B.     <u>The Petitioner's Bill of Attainder Claim</u>. The Petitioner describes his first ground for relief as follows:

> By taking away statutory good time (both vested and non-vested)[Title 18 USC §3624(b)(1)] the Respondents through an executive Court usurps [sic] judicial authority of Article III in the Constitution, and their Court is a Bill of Attainder.

<u>Petition</u>, supra at p. 3 ¶9.

We conclude that the Petitioner's Bill of Attainder argument is wholly without merit. The Bill of Attainder clause states that "[n]o Bill of Attainder or ex post facto law shall be passed." <u>United States Constitution, Art. I, §9, cl. 3</u>.[6] The clause is part of Article I of the Constitution, which establishes, and limits, the authority of the Legislative Branch of the Federal Government.

Indeed, a Bill of Attainder is, by definition, "a bill" -- in other words, a **legislative** instrument. "Bills of attainder are 'legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial.'" <u>Risenhoover v. Washington County Community Services</u>, 545 F. Supp.2d 885, 891 (D. Minn. 2008), quoting <u>Citizens for Equal Protection v. Bruning</u>, 455 F.3d 859, 869 (8th Cir. 2006), quoting, in turn, <u>United States v. Lovett</u>, 328 U.S. 303, 315 (1946); see also, <u>Black's Law Dictionary</u> (8th ed. 2004)(defining a bill of attainder as "[a] special **legislative act** prescribing punishment, without a trial, for a specific person or group.")[emphasis added]. In addition, the United States Supreme Court has described a Bill of Attainder as "a law that legislatively determines guilt and inflicts

---

[6]The Constitution also refers to Bills of Attainder in Article I, Section 10, clause 1, but that clause is inapposite here, because it applies to the States, and not to the Federal Government.

punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Administrator of General Services, 433 U.S. 425, 468 (1977).

Thus, the fundamental premise of the Petitioner's first ground for relief -- that the Constitution's Bill of Attainder clause limits the authority of the **Executive** Branch of Government, including the BOP -- is simply wrong. The Bill of Attainder clause impacts upon the authority of Congress, and does not prevent the BOP from conducting disciplinary proceedings, and imposing sanctions on prisoners who are found to have violated prison regulations. See, Kokoski v. Small, 2008 WL 3200811 at *5 (S.D.W.Va. 2008)("It is clear that the incident reports lodged against [a Federal prisoner] are not 'bills of attainder.'").

Since the Bill of Attainder clause has no bearing on prison disciplinary proceedings, we reject the Petitioner's first ground for Habeas relief.

C.     The Petitioner's Due Process Claim.

1.     Standard of Review. The Fifth Amendment prohibits the Federal Government from depriving a person of life, liberty, or property, without due process of law. While it is true that the constitutional protections encompassed by the Due Process Clause do not abate at the time of imprisonment, see, Hudson v. Palmer, 468 U.S. 517, 539 (1984)(O'Connor, J., concurring), it is also true that "lawful

incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 485 (1995), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977), quoting, in turn, Price v. Johnston, 334 U.S. 266, 285 (1948).

Although prison disciplinary proceedings often implicate liberty interests, they are not criminal trials, and therefore, they do not involve the full panoply of procedural and substantive protections that are available in criminal proceedings. See, Wolff v. McDonnell, 418 U.S. 539, 567-68 (1974). Nevertheless, in Wolff, the Supreme Court enumerated the minimum due process requirements of a prison disciplinary proceeding as follows:

> 1.  Written notice of the claimed violation must be given to the prisoner at least 24 hours prior to the Hearing;
>
> 2.  A written statement must be compiled by the factfinder describing the evidence relied upon and the reasons for the findings and disciplinary action;
>
> 3.  The prisoner should be permitted to call witnesses and to present evidence in defense of the charges, unless doing so would jeopardize institutional safety or correctional goals; and
>
> 4.  Where the inmate is illiterate, or the complexity of the issue makes it unlikely that the inmate will be able to

> collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

Id. at 563-70; see also, Espinoza v. Peterson, 283 F.3d 949, 951-952 (8th Cir. 2002)(applying Wolff to a Habeas proceeding, which challenged a disciplinary proceeding and the resultant loss of good-time credit).

Beyond those procedural due process considerations, the Supreme Court has determined that, in order to comply with constitutional due process, at least "some evidence" must support the finding of a disciplinary sanction. See, Superintendent v. Hill, 472 U.S. 445, 455 (1985). As explained by the Court:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced." * * * Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. [internal citations omitted]; see also, Louis v. Department of Correctional Services of Nebraska, 437 F.3d 697, 700 (8th Cir. 2006), cert. denied, 549 U.S. 847 (2006).

With these precepts in mind, we turn to the merits of the Petition.

      2.    Legal Analysis. After reviewing the Record, in light of the asserted due process violations, we find that the Petitioner was provided adequate procedural due process protections, which fully complied with the requisites of Wolff.

First, he was given written notice of the charge, in the form of an incident report, on February 15, 2008, well in advance of 24 hours prior to his appearance before the DHO on February 28, 2008. See, Buege Decl., Attachments B-C. Second, as required, the factfinder provided the Petitioner with a written statement describing the evidence relied upon, and the reasons for the findings, and the disciplinary action. Id., Attachments D-E. Finally, the Petitioner was informed of his rights to be represented by a staff member, to call witnesses, and to introduce evidence at the Hearing, and he exercised his right to call witnesses. Id., Attachments C-D.

Moreover, after reviewing the evidence which was presented at the Hearing, it is clear that there was "some evidence" to conclude that the Petitioner was guilty of the offense charged. The Petitioner argues that he was wrongfully found to have violated Code 224, because both he and Quijano "stated that their [sic] was neither an argument, assault or a fight." Felix Aff., supra at ¶11. We do not agree, and we find that there was ample evidence to conclude that the Petitioner committed the offense of which he was charged.

As recounted by the DHO, the documentary evidence established that the Petitioner did not suffer any physical injuries, while Quijano suffered a skin tear on his thumb, as well as an abrasion to his thigh. See, Buege Decl., supra, Attachment

D.  Quijano also reported that the Petitioner had thrown a chair and other objects at him.  Id., Attachment E.  In addition, the DHO noted that several inmates gave confidential statements, in which they reported that the Petitioner had physically assaulted Quijano.  Id., Attachments B and D.  The DHO also considered the statements from the Petitioner's witnesses, one of whom reported that he witnessed Felix and Quijano in a verbal argument, contrary to Felix's current assertions.  Id., Attachment D.  The DHO's decision was affirmed on appeal, and the Central Office explicitly found that "the required disciplinary procedures were substantially followed," "[e]ach of [the Petitioner's] Due Process rights were upheld," "[t]he greater weight of the evidence supports the DHO's decision, and the sanctions imposed * * * were commensurate to the severity level of the offense and in compliance with policy."  Petitioner's Reply, supra, Exhibit B.  As a result, we reject the Petitioner's contention, that the DHO's decision was unsupported by the evidence.

Lastly, the Petitioner asserts that the BOP violated its own regulations, during the course of the disciplinary proceeding.  See, Petitioner's Reply, supra at p. 10.[7]

_____

[7]We reject the Petitioner's assertion that he was not allowed to give a statement, see, Felix Aff., supra at ¶13, which is plainly contradicted by the Record.  Here, the Record demonstrates that the Petitioner provided a statement, at each stage of the prison disciplinary proceeding -- in other words, to the investigating officer, to the UDC, and to the DHO.  See, Buege Decl., supra, Attachments B and D.; see also, Title

First, the Petitioner contends that the DHO could not impose sanctions that were unrelated to his alleged violation. See, Petition, supra at p. 3. Here, the Petitioner cites to Title 28 C.F.R. §541.12, which describes an inmate's visitation and commissary privileges. However, when an inmate is found guilty of violating BOP Code 224, as here, Title 28 C.F.R. §541.13 explicitly authorizes the DHO to impose a loss of privileges, even if the sanction is not directly related to the offense. See, Title 28 C.F.R. §514.13(a)(2), Table 3, and Table 4 ("[T]he DHO or UDC may impose a loss of privilege sanction not directly related to the offense when there is a lack of other appropriate sanctions or when imposition of an appropriate sanction previously has been ineffective."). Here, the DHO explained that, "[a]lthough not directly related

---

28 C.F.R. §541.14(b)(2) (requiring the investigating officer to ask for the inmate's statement); §541.15(d) (permitting the inmate to make a statement at the initial Hearing before the UDC); §541.17(c) (permitting the inmate to make a statement at the final Hearing before the DHO). Moreover, in his Affidavit, the Petitioner plainly admits that he made a statement. See, Felix Aff., supra at ¶11 ("Both Quijano and I stated that their [sic] was neither an argument, assault or a fight."). Accordingly, the Petitioner's assertion, that he was not permitted to give a statement, is wholly without merit.

Moreover, with respect to the Petitioner's claim that the "investigating guard" did not make a statement, see, Felix Aff., supra at ¶13, the Record demonstrates that the Petitioner was advised of, and exercised, his right to call witnesses before the DHO. See, Buege Decl., supra, Attachments C-D. He cannot now complain that the investigating officer did not make a statement, when he failed to call the officer as a witness.

to the infraction, privileges were taken to deter the inmate from such actions in the future," <u>Buege Decl.</u>, supra, Attachment D, and that determination was affirmed on appeal.  See, <u>Petitioner's Reply</u>, supra, Exhibit B ("[T]he sanctions imposed * * * were commensurate to the severity level of the offense and in compliance with policy.").  Accordingly, the DHO's imposition of sanctions did not violate any BOP regulation, and we reject the Petitioner's claim to the contrary.

The Petitioner also asserts that the BOP violated its own regulations, by failing to provide an Incident Report within twenty-four (24) hours of the alleged assault. See, <u>Felix Aff.</u>, supra at ¶12.  According to the Petitioner, he was placed in disciplinary segregation on January 29, 2008, but the Incident Report was not delivered until February 15, 2008.  <u>Id.</u>  In this respect, Title 28 C.F.R. §541.15(a) provides that "[s]taff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident."  In addition, Title 28 C.F.R. §541.15(b)(2) provides, in pertinent part, that "[t]he investigating officer * * * shall give the inmate a copy of the Incident Report at the beginning of the investigation, unless there is good cause for delivery at a later date * * * ."

Here, even assuming that the Incident Report was not timely delivered, according to those regulations, the Petitioner has not demonstrated that the violation had any constitutional significance. See, <u>Terry v. Fondren</u>, 2008 WL 5071077 at *5 (D. Minn., November 24, 2008)("While an agency's failure to follow its own ordinances or regulations may constitute deprivation of property without due process, <u>Derrickson v. St. Louis Bd. of Education</u>, 703 F.2d 309, 315 (8th Cir. 1983), an agency's failure to comply in every respect does not in every case require a remand."), citing <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413 (M.D. Pa. 1994); <u>White v. Henman</u>, 977 F.2d 292, 295 (7th Cir. 1992)("[T]he question is not whether some employee of the United States goofed up but whether the error yields unconstitutional or otherwise illegal custody.").

Here, the Petitioner had ample notice of the charges against him, prior to the Hearings before the UDC and the DHO, and he was advised of his rights to a staff representative, to present evidence, and to call witnesses. See, <u>Terry v. Fondren</u>, supra at *6 ("Although Petitioner alleges a violation of BOP regulations with respect to documentation, he does not allege that he did not actually know or understand the charges against him."). As a result, we find no basis to conclude that the untimely

delivery of the Incident Report resulted in a deprivation of the Petitioner's Due Process rights.

In sum, we find no violation of the Petitioner's constitutional rights, as a result of the prison disciplinary proceeding, and we recommend that his Petition be denied, in its entirety.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be denied.


Dated:  August 3, 2009                    s/Raymond L. Erickson
                                          Raymond L. Erickson
                                          CHIEF U.S.  MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **August 20, 2009**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **August 20, 2009**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.